IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**
c/o Department of Justice
Washington, D.C. 20530,

                          Plaintiff,

    v.

                                                Civil Action No.

**SCOTT R. SACANE**
20 Marshall Street
Suite320
South Norwalk, CT 06854,

                          Defendant.

## COMPLAINT

The United States of America, Plaintiff, by its attorneys, acting under the direction of the Attorney General of the United States and at the request of the Federal Trade Commission, brings this civil antitrust action to obtain monetary relief in the form of civil penalties against Defendant Scott R. Sacane ("Sacane"), alleging as follows:

## I. NATURE OF THE ACTION

1. Sacane violated the notice and waiting requirements of the Hart-Scott-Rodino Act by failing to file notification with the Federal Trade Commission and the Department of Justice before making certain acquisitions of voting securities through an investment fund that he controlled. Sacane exceeded the Act's $50 million threshold with respect to his holdings of Aksys, Ltd. ("Aksys") and ultimately held more than 50% of its voting securities without

1

complying with the Act.  Sacane also exceeded the Act's $50 million threshold with respect to his

holdings of Esperion Therapeutics, Inc. ("Esperion") and ultimately held more than $100 million

of its voting securities without complying with the Act.

## II.  JURISDICTION AND VENUE

2.  This Complaint is filed and these proceedings are instituted under Section 7A of the

Clayton Act, 15 U.S.C. § 18a ("HSR Act" or "Act"), added by Title II of the Hart-Scott-Rodino

Antitrust Improvements Act of 1976, to recover civil penalties for violations by the Defendant of

the Act.

3.  This Court has jurisdiction over the Defendant and over the subject matter of this

action pursuant to 15 U.S.C. § 18a(g) and 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

4.  Venue is properly based in this District by virtue of Defendant's consent, in the

Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in

this District.

## III.  THE DEFENDANT AND RELATED ENTITIES

5.  Scott R. Sacane, a natural person, is made the Defendant herein.  Sacane is the

Managing Director of Durus Capital Management (N.A.), LLC ("Management"), which is the

managing member of Durus Life Sciences Fund, LLC ("Durus").  At all times relevant to this

complaint, Sacane was entitled to more than 50% of the profits of Management.  At all times

relevant to this complaint, Sacane controlled Management and Durus Life Science Master Fund

Ltd. ("Master Fund") within the meaning of § 801.1(b) of the Premerger Notification Rules, 16

C.F.R. § 801.1(b), and was an "ultimate parent entity" of Management and Master Fund as that

term is defined in 16 C.F.R. § 801.1(a)(3).  At all times relevant to this complaint, Sacane was

2

engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the

Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1).    At

all times relevant to this complaint, Sacane had total assets in excess of $100 million.

6. Management, formerly known as Highline Management (N.A.), LLC, is a limited

liability company organized under the laws of Delaware.    At all times relevant to this complaint,

Management had the contractual power to designate a majority of the board of directors of Master

Fund and controlled Master Fund within the meaning of 16 C.F.R. § 801.1(b).

7. Durus is a limited liability company organized under the laws of Delaware.  Durus is an

investment company that conducts all of its investment and trading activities through, and invests

substantially all of its assets in, Master Fund.  At all times relevant to this complaint, Durus held

over 50% of the voting securities of Master Fund.  At all times relevant to this complaint, Durus

controlled Master Fund within the meaning of 16 C.F.R. § 801.1(b) of the Premerger Notification

Rules, and was an ultimate parent entity of Master Fund.

8. Master Fund, previously known as Highline Life Sciences Master Fund Ltd., is an

investment fund organized under the laws of the Cayman Islands for the purpose of investing in

securities, with its principal place of business in the Cayman Islands.  At all times relevant to this

complaint, Master Fund had two ultimate parent entities, Durus and Sacane.

## IV.  **OTHER ENTITIES**

9. Aksys is a corporation organized under the laws of Delaware with its principal place of

business in Lincolnshire, IL.  At all times relevant to this complaint, Aksys was engaged in

commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton

3

Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1). At all times relevant to this complaint, Aksys had total assets in excess of $10 million.

10. Esperion, at all times relevant to this complaint, was a corporation organized under the laws of Delaware, with its principal office and place of business in Ann Arbor, MI. At all times relevant to this complaint, Esperion was engaged in commerce, or in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1). At all times relevant to this complaint, Esperion had total assets in excess of $10 million.

## V. THE HART-SCOTT-RODINO ACT AND RULES

11. The HSR Act requires certain acquiring persons and certain persons whose voting securities or assets are acquired to file notifications with the Federal Trade Commission and the Department of Justice ("federal antitrust agencies") and to observe a waiting period before consummating certain acquisitions of voting securities or assets. 15 U.S.C. § 18a(a) and (b). The notification and waiting period are intended to give the federal antitrust agencies prior notice of, and information about, certain proposed transactions. The waiting period is also intended to provide the federal antitrust agencies with an opportunity to investigate proposed transactions and to determine whether to seek an injunction to prevent the consummation of transactions that may violate the antitrust laws.

12. Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), the federal antitrust agencies promulgated Rules to carry out the purposes of the HSR Act. These Rules, among other things, define terms contained in the HSR Act.

13. Section 801.1(a)(1) of the Rules, 16 C.F.R. § 801.1(a)(1), defines "person" to mean "an ultimate parent entity and all entities which it controls directly or indirectly."

14. Section 801.1(a)(3) of the Rules, 16 C.F.R. § 801.1(a)(3), defines "ultimate parent entity" to mean "any entity which is not controlled by any other entity."

15. Section 801.1(b) of the Rules, 16 C.F.R. §801.1(b) defines "control."

16. An acquiring entity may have more than one ultimate parent entity. Each such ultimate parent entity is an acquiring person and must file notifications with the federal antitrust agencies if the acquisition is reportable under the Act.

17. An acquiring person making an acquisition of voting securities must indicate in its Notification and Report Form a notification threshold for which such notification is being filed. Those notification thresholds are set forth in Section 801.1(h) of the Rules, 16 C.F.R. § 801.1(h). An acquiring person who identified the lowest threshold, $50 million of voting securities, and crossed that threshold after the waiting period expired, would have to comply with the Act's notice and waiting period requirements again before crossing a higher threshold, such as the threshold of $100 million of voting securities or the threshold of 50% of voting securities. An acquiring person who believes that it may within one year of the expiration of its waiting period cross a notification threshold higher than the $50 million threshold can avoid the need to observe the Act's requirements a second time by indicating in its Form the highest threshold that it believes it may cross. (The dollar thresholds stated in this paragraph were the thresholds in effect at all times relevant to this Complaint.)

18. Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act

is liable to the United States for a civil penalty for each day during which such person is in violation. The maximum amount of civil penalty is $11,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996).

## VI. ACQUISITIONS OF AKSYS AND ESPERION VOTING SECURITIES AND VIOLATIONS OF THE HART-SCOTT-RODINO ACT

### The Aksys Acquisitions

19. Master Fund acquired 15,000 shares of Aksys on February 24, 2003. As a result of this acquisition, Master Fund held an aggregate total amount of Aksys voting securities of approximately $51.4 million, exceeding the Hart-Scott-Rodino Act's then $50 million threshold, but representing less than 50% of the outstanding voting securities of Aksys.

20. Master Fund continued acquiring additional shares of Aksys, and, on April 24, 2003, it acquired an additional 56,200 shares in Aksys. This acquisition brought the value of the Master Fund's holdings of Aksys to over $85 million, representing approximately 50.1% of the outstanding voting securities of Aksys, exceeding the Rules' 50% notification threshold.

21. As an ultimate parent entity of Master Fund, Sacane was required by the HSR Act to submit a notification and observe the Act's waiting period before Master Fund made the acquisitions described in paragraphs 19 and 20.

22. Sacane failed to file a premerger notification and report form with the federal antitrust agencies and failed to observe the statutory waiting period before the acquisitions of Aksys voting securities described in paragraphs 19 and 20.

23.  On or about July 23, 2003, Sacane's outside counsel raised questions with Sacane concerning the HSR reportability of the Aksys acquisitions.  On August 29, 2003, Sacane submitted two premerger notifications under the HSR Act for Durus, which was also an ultimate parent entity of Master Fund, notifying the federal antitrust agencies that Durus had crossed the $50 million and 50% notification thresholds in connection with Master Fund's acquisitions of Aksys shares.

24.  After being informed by the FTC's Premerger Notification Office in January 2005 that Sacane was also an ultimate parent entity of Master Fund, Sacane filed two premerger notifications for himself as an acquiring person in connection with the same acquisitions on April 1, 2005.

25.  Sacane was in continuous violation of the HSR Act with regard to the acquisitions of Aksys voting securities during the period beginning on February 24, 2003 through May 2, 2005.

**The Esperion Acquisitions**

26.  Master Fund acquired 56,700 shares of Esperion on March 24, 2003.  As a result of this acquisition, Master Fund held an aggregate total amount of Esperion voting securities of approximately $50.4 million, exceeding the Hart-Scott-Rodino Act's then $50 million reporting threshold.

27.  Master Fund continued acquiring additional shares of Esperion, and, on June 3, 2003, it acquired an additional 49,700 shares of Esperion.  This acquisition brought the value of the Master Fund's holdings of Esperion to approximately $102.3 million, exceeding the Rules' then $100 million notification threshold, but representing less than 50% of the outstanding voting securities of Esperion.

7

28.  As an ultimate parent entity of Master Fund, Sacane was required by the HSR Act to submit a notification and observe the Act's waiting period before Master Fund made the acquisitions described in paragraphs 26 and 27.

29.  Sacane failed to file a premerger notification and report form with the federal antitrust agencies and failed to observe the statutory waiting period before the acquisitions of Esperion voting securities described in paragraphs 26 and 27.

30.  On or about July 23, 2003, Sacane's outside counsel raised questions with Sacane concerning the HSR reportability of the Esperion acquisitions.  On August 29, 2003, Sacane submitted two premerger notifications under the HSR Act for Durus, which was also an ultimate parent entity of Master Fund, notifying the federal antitrust agencies that Durus had crossed the $50 million and $100 million notification thresholds in connection with Master Fund's acquisitions of Esperion shares.

31.  After being informed by the FTC's Premerger Notification Office in January 2005 that Sacane was also an ultimate parent entity of Master Fund, Sacane submitted two premerger notifications for himself as an acquiring person in connection with the same acquisitions on April 1, 2005.

32.  Sacane was in continuous violation of the HSR Act with regard to the acquisitions of Esperion voting securities during the period beginning on March 24, 2003 through May 2, 2005.

## VII. **PRAYER**

WHEREFORE, Plaintiff prays:

1.    That the Court adjudge and decree that the acquisitions made by Master Fund of voting securities of Aksys beginning on February 24, 2003, as a result of which Master Fund held voting

8

securities of Aksys valued in excess of $50 million, and ending on April 24, 2003, as a result of which Master Fund held greater than 50% of the voting securities of Aksys, were in violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Sacane, as ultimate parent entity of Master Fund, was in violation of the HSR Act each day from February 24, 2003, through May 2, 2005.

2.    That the Court adjudge and decree that the acquisitions made by Master Fund of voting securities of Esperion beginning on March 24, 2003, as a result of which Master Fund held voting securities of Esperion valued in excess of $50 million, and ending on June 3, 2003, as a result of which Master Fund held voting securities of Esperion valued in excess of $100 million, were in violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant Sacane, as ultimate parent entity of Master Fund, was in violation of the HSR Act each day from March 24, 2003, through May 2, 2005.

3.    That the Court order Defendant Sacane to pay to the United States appropriate civil penalties as provided by the HSR Act, 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996).

4.    That the Court order such other and further relief as the Court may deem just and proper.

5.    That the Court award the Plaintiff its costs of this suit.

Dated: _____9/26_____, 2005.

FOR THE PLAINTIFF UNITED STATES
OF AMERICA:


Thomas O. Barnett
Acting Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C.  20530


Daniel P. Ducore
D.C. Bar No. 933721
Special Attorney


Roberta S. Baruch
D. C. Bar No. 269266
Special Attorney


Federal Trade Commission
Washington, D.C.  20580
(202) 326-2861

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**
c/o Department of Justice
Washington, D.C. 20530,

Plaintiff,

Civil Action No.

v.

**SCOTT R. SACANE**
20 Marshall Street
Suite 320
South Norwalk, CT 06854,

Defendant.

## STIPULATION

It is stipulated by and between the undersigned parties, by their respective attorneys, that:

(1) the parties consent that the Court may file and enter a Final Judgment in the form attached to this Stipulation, on the Court's own motion or on the motion of any party at any time, and without further notice to any party or other proceedings, if Plaintiff has not withdrawn its consent, which it may do at any time before the entry of judgment by serving notice of its withdrawal on Defendant Scott R. Sacane and filing that notice with the Court;

(2) Defendant Scott R. Sacane waives any objection to venue or jurisdiction for purposes of this Final Judgment and authorizes Matthew Dontzin, Esquire, of The Dontzin Law Firm L.L.P., to accept service of all process in this matter on his behalf; and

(3) in the event Plaintiff withdraws its consent or if the proposed Final Judgment is not

entered pursuant to this Stipulation, this Stipulation shall be of no effect whatever and the

making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

FOR THE DEFENDANT:

Matthew S. Dontzin
The Dontzin Law Firm L.L.P.
6 East 81ˢᵗ Street
New York, NY 10028
(212) 717-2900
Counsel for Defendant

2

Dated: 9/26/05

**FOR THE PLAINTIFF:**

Thomas O. Barnett
Acting Assistant Attorney General

Susan A. Creighton
Director

Bernard A. Nigro, Jr.
D.C. Bar No. 412357
Deputy Director

Daniel P. Ducore
D.C. Bar No. 933721
Assistant Director

Roberta S. Baruch
D.C. Bar No. 269266
Deputy Assistant Director

Department of Justice
Antitrust Division
Washington, D.C.  20530
(202) 514-2401

Bureau of Competition
Federal Trade Commission
6th Street and Pennsylvania Ave., N.W.
Washington, D.C.  20580
(202) 326-2861

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**
c/o Department of Justice
Washington, D.C. 20530,

                Plaintiff,

    v.

**SCOTT R. SACANE**
20 Marshall Street
Suite 320
South Norwalk, CT 06854,

                Defendant.

Civil Action No.

## FINAL JUDGMENT

Plaintiff, the United States of America, having commenced this action by filing its

Complaint herein for violation of Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly

known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"), and Plaintiff

and Defendant, Scott R. Sacane, by their respective attorneys, having consented to the entry of

this Final Judgment without trial or adjudication of any issue of fact or law herein, and without

this Final Judgment constituting any evidence against or an admission by the Defendant with

respect to any such issue:

Now, therefore, before the taking of any testimony and without trial or adjudication of

any issue of fact or law herein, and upon the consent of the parties hereto, it is hereby

Ordered, Adjudged, and Decreed as follows:

## I.

The Court has jurisdiction of the subject matter of this action and of the Plaintiff and the Defendant. The Complaint states a claim upon which relief can be granted against the Defendant under Section 7A of the Clayton Act, 15 U.S.C. § 18a.

## II.

Judgment is hereby entered in this matter in favor of Plaintiff United States of America and against Defendant Scott R. Sacane, and, pursuant to Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134 § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54549 (Oct. 21, 1996), Defendant Scott R. Sacane is hereby ordered to pay a civil penalty in the amount of three hundred and fifty thousand dollars ($350,000). Payment shall be made by wire transfer or cashier's check. If the payment is made by wire transfer, Defendant shall contact Janie Ingalls of the Antitrust Division's Antitrust Documents Group at (202) 514-2481 for instructions before making the transfer. If the payment is made by cashier's check, the check shall be made payable to the United States Department of Justice and delivered to:

> Janie Ingalls
> United States Department of Justice
> Antitrust Division, Antitrust Documents Group
> 325 7th Street, NW

2

Suite 215 North
Washington, D.C. 20530.

Defendant shall pay the full amount of the civil penalties within thirty (30) days of entry of this

Final Judgment. In the event of a default in payment, interest at the rate of eighteen (18) percent

per annum shall accrue thereon from the date of default to the date of payment.


III.

Each party shall bear its own costs of this action.


IV.

Entry of this Final Judgment is in the public interest.


Dated: _____, 2005.




_____

United States District Judge


3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
c/o Department of Justice
Washington, D.C. 20530,

                              Plaintiff,

        v.                                        Civil Action No.

SCOTT R. SACANE,
20 Marshall Street
Suite 320
South Norwalk, CT 06854,

                              Defendant.

## MOTION FOR ENTRY OF JUDGMENT

Plaintiff, having filed its Complaint in the above-captioned case, and having filed this

date a Stipulation and proposed Final Judgment, hereby moves this Court for entry of a Final

Judgment against Defendant Scott R. Sacane ("Defendant").  By agreement of the parties, the

Final Judgment against the Defendant provides for the payment of a civil penalty totaling

$350,000 by Defendant pursuant to Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1).

## STATEMENT OF POINTS AND AUTHORITIES

The Complaint in this action alleges that Defendant violated Title II of the Hart-Scott-

Rodino Antitrust Improvements Act of 1976 ("HSR Act" or "Act"), Section 7A of the Clayton

Act, 15 U.S.C. § 18a, which requires certain acquiring persons and certain persons whose voting

securities or assets are to be acquired to file notification with the Department of Justice and the

Federal Trade Commission and to observe a waiting period before consummating certain

acquisitions of voting securities or assets.  The Complaint alleges that Defendant was in

continuous violation of the HSR Act each day during the period beginning on February 24, 2003, through May 2, 2005, with respect to acquisitions of voting securities of one company; and beginning on March 24, 2003, through May 2, 2005, with respect to acquisitions of voting securities of another company. Under section (g)(1) of the Hart-Scott-Rodino Act, 15 U.S.C. § 18a(g)(1), any person who fails to comply with the Act shall be liable to the United States for a civil penalty of not more than $11,000 for each day during which such person is in violation of the Act.[1] Accordingly, the Complaint seeks "appropriate civil penalties." As the Stipulation and proposed Final Judgment state, Defendant has agreed to pay civil penalties totaling $350,000 within thirty days of entry of the Final Judgment.

The procedures of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16 (b)-(h), are not required in this action. The APPA requires that any proposal for a "consent judgment" submitted by the United States in a civil case filed "under the antitrust laws" be filed with the court at least sixty days in advance of its effective date, published in the Federal Register and a newspaper for public comment, and reviewed by the court for the purpose of determining whether it is in the public interest. Key features of the APPA are preparation by the United States of a "competitive impact statement" explaining the proceeding and the proposed judgment, and the consideration by the court of the proposed judgment's competitive impact and its impact on the public generally as well as individuals alleging specific injury from the violation set forth in the complaint.

---

[1] The maximum daily civil penalty, which had been $10,000, was increased to $11,000 for violations occurring on or after November 20, 1996, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134 § 31001(s) and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996).

2

Because the Complaint seeks, and the Final Judgment provides for, only the payment of civil penalties, the procedures of the APPA are not required in this action. A consent judgment in a case seeking only monetary penalties is not the type of "consent judgment" contemplated by the APPA. Civil penalties are intended to penalize a defendant for violating the law, and, unlike injunctive relief, have no "competitive impact," and no effect on other persons or on the public generally, within the context of the APPA. The legislative history of the APPA does not contain any indication that Congress intended to subject settlements of civil penalty actions to its competitive impact review procedures. No court to date has required use of APPA procedures in cases involving only the payment of civil penalties.[2]

---

[2] *See, e.g., United States v. Manulife Fin. Corp.*, 2004-1 Trade Cas. (CCH) ¶ 74,426 (D.D.C.); *United States v. The Hearst Trust*, 2001-2 Trade Cas. (CCH) ¶ 73,451 (D.D.C.); *United States v. Input/Output et al.*, 1999-1 Trade Cas. (CCH) ¶ 24,585 (D.D.C.); *United States v. Blackstone Capital Partners II Merchant Banking Fund et al.*, 1999-1 Trade Cas. (CCH) ¶ 72,484 (D.D.C.). In each case, the United States noted the issue in a motion for entry of judgment, explaining that the APPA did not apply.

For the above reasons, the United States asks the Court to enter the Final Judgment in this case.

Dated: 9/26/05

                                     Respectfully submitted,

                                     Daniel P. Ducore
                                     D.C. Bar No. 933721
                                     Special Attorney

                                     Roberta S. Baruch
                                     D.C. Bar No. 269266
                                     Special Attorney

                                     Bureau of Competition
                                     Federal Trade Commission
                                     601 New Jersey Avenue, NW
                                     Room 5223
                                     Washington, D.C.  20580

                                     Phone  202 326 2526
                                     Fax      202 326 3396

4

## PERSONS TO BE NOTIFIED OF ENTRY OF JUDGMENT

Pursuant to Rule 108(k) of the District of Columbia Federal District Court Rules, the

following persons are to be notified of the entry of the attached final judgment:

Matthew S. Dontzin, Esquire
The Dontzin Law Firm
6 East 81st Street
New York, NY 10028

Daniel P. Ducore
Roberta Baruch
Special Attorneys to the
      United States Attorney General
Federal Trade Commission
Bureau of Competition
Washington, D.C.  20580

Jack Sidorov, Esquire
United States Department of Justice
Antitrust Division
950 Pennsylvania Avenue, NW, Room 3239
Washington, D.C.  20530

## CERTIFICATE OF SERVICE

I, Roberta S. Baruch, certify that on ___9/26___, 2005, the attached "Motion for Entry

of Judgment," with exhibits, including a "Stipulation" and proposed "Final Judgment" were

served upon the parties by mailing a copy to the person listed below:

> Matthew S. Dontzin, Esquire
> The Dontzin Law Firm
> 6 East 81st Street
> New York, NY 10028

Dated: 9/26/05

Roberta S. Baruch
Special Attorney to the
United States Attorney General
Federal Trade Commission
Washington, D.C.  20580
(202) 326-2861